# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| In re | Case No. 14-80217-WRS |
| | Chapter 13 |
| ROBERT ERIC SAGGUS, | |
| Debtor | |
| AMY WARD SAGGUS, | |
| Plaintiff | Adv. Pro. No. 14-8009-WRS |
| v. | |
| ROBERT ERIC SAGGUS, | |
| Defendant | |

## MEMORANDUM OPINION

This adversary proceeding is before the Court on Plaintiff Amy Ward Saggus's complaint to determine dischargeability of a marital debt owed her by her ex-husband, Defendant Robert Saggus, the debtor in the underlying bankruptcy proceeding. Plaintiff claims that this debt is a domestic support obligation pursuant to 11 U.S.C. § 523(a)(5). Alternatively, Plaintiff claims that the debt arises from false pretenses pursuant to 11 U.S.C. § 523(a)(2)(A), and from a materially false written statement of Defendant's financial condition pursuant to 11 U.S.C. § 523(a)(2)(B). A trial was held on the matter, and both parties have submitted post-trial briefs in support of their positions. For the reasons stated below, the Court holds that the debt is not a domestic support obligation. The Court further holds that the debt did not arise from false pretenses or from a false writing of Defendant's financial condition. Therefore, Defendant's debt to Plaintiff is dischargeable.

## I. FACTS

### A. The Divorce Agreement

Robert and Amy Saggus were divorced in Lee Circuit County Court on July 15, 2011.[1] (Ex. 1). The divorce judgment incorporated a settlement agreement between the parties. (Ex. 1). Under Section I, entitled "Property Division," and subsection E, entitled "Property Settlement," Robert agreed to pay Amy "the sum of $35,000.00 with interest thereon at the rate of [6%] per annum." (Ex. 1). Subsection E provided that the "payments shall be made in 72 consecutive monthly installments of $580.05 each commencing [July 1, 2011] and continuing . . . thereafter until paid in full." (Ex. 1). Subsection E also contained an acceleration clause: "In the event [Robert] shall fail to make prompt payment . . . the entire remaining balance of said obligation, together with accrued interest thereon, shall be immediately due and payable." (Ex. 1).

The divorce agreement also awarded Amy the marital home. (Ex. 1). However, a federal tax lien owed solely by Robert in the amount of $2,990.00 was attached to the home. (Ex. 1). The divorce agreement provided that Amy would pay off the tax lien and that Robert would reimburse her within 90 days of the divorce. (Ex. 1). Under Section III, entitled "General Provisions," and subsection B, entitled "Periodic Alimony," the divorce court "reserve[d] the award of alimony until such time as [Robert] secures the release of the Federal Tax Lien" against the marital home. (Ex. 1). Subsection B also provided that if Robert failed to reimburse Amy for the payment of the tax lien, "the Court may then address the issue of alimony for the sole purpose of reimbursing [Amy] for the damages resulting from [Robert's] failure to secure the

---

[1] Robert was the plaintiff in the divorce proceeding. Amy is the plaintiff in this adversary proceeding. There were no children born from the marriage.

2

release of said tax lien." (Ex. 1). If Robert secured the release of the tax lien, alimony would "be deemed waived by each party and the Court [would] have no jurisdiction to reopen the same." (Ex. 1).

### B. The Consent Judgment

Robert defaulted on his obligations to Amy under the divorce agreement. Amy filed a motion to enforce the agreement in the divorce court in July 2012, and the parties agreed to a consent judgment that was entered on December 4, 2013. (Ex. 2, 3). The consent judgment stated that Robert owed Amy $34,725.00 for the combined amount of the tax lien and the "Property Settlement" debt. (Ex. 2). The consent judgment further provided that "[a]ccrual of interest and execution on the judgment shall be stayed so long as [Robert] makes timely payments of $350.00 per month to [Amy.]" (Ex. 2). If Robert defaulted, interest would "accrue at the statutory rate" and Amy could execute on the judgment.[2] (Ex. 2). Finally, the consent judgment stated that "Defendant agrees that said debt is not dischargeable pursuant to any petition filed in the U.S. Bankruptcy Court, and agrees not to pursue discharge of this debt."[3] (Ex. 2). Robert made only one payment of $350.00 before he defaulted on the consent judgment. Amy executed on his vehicle.

---

[2]In Alabama, the statutory rate for post-judgment interest is 12%. ALA. CODE § 8-8-10.

[3]Because the proceeding leading to the consent judgment derived from the original divorce, Robert was the plaintiff and Amy was the defendant; the heading on the consent judgment reflects this. The Court finds that the consent judgment's reference to "Defendant" in this sentence is a typographical error and that it intended to refer to "Plaintiff" – i.e., Robert.

### C. Bankruptcy and Adversary Proceeding

Robert filed a bankruptcy petition under Chapter 13 on February 21, 2014. (Case No. 14-80217). Robert's petition lists Amy as an unsecured priority creditor for $2,990.00 – the amount of the tax lien – and as an unsecured non-priority creditor for $32,000.00. (Case No. 14-80217, Doc. 1). Likewise, Robert's Chapter 13 plan lists Amy as having a priority claim of $2,990.00 for a domestic support obligation, and proposes to pay a total of $5,000.00 toward unsecured non-priority claims. (Case No. 14-80127, Doc. 2).

Amy timely filed a proof of claim in the amount of $34,725.00 and asserted that all of it was entitled to priority under 11 U.S.C. § 507(a)(1) and (a)(8). (Case 14-80127, Claim 6). Amy also objected to confirmation of Robert's plan, but later withdrew her objection. (Case 14-80127, Docs. 31 & 39). The Court confirmed Robert's plan on September 18, 2014. (Case 14-80127, Doc. 45).

Amy initiated this adversary proceeding on June 16, 2014. (Doc. 1). She alleges that the debt Robert owes her is non-dischargeable pursuant to 11 U.S.C. § 523(a)(5) because it is a domestic support obligation. She also alleges that the debt is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) and (a)(2)(B) because it arises from false pretenses and from materially false written statements of Robert's financial condition. At trial, the Court heard testimony from both parties. In addition, the divorce agreement, consent judgment, and motion for consent judgment were all admitted into evidence. The parties have submitted post-trial briefs which have been considered by the Court. (Docs. 23 and 24).

### II. JURISDICTION, VENUE, & BURDEN OF PROOF

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 157(a), and the District Court's General Order of Reference dated April 25, 1985. Venue is proper pursuant to 28 U.S.C. § 1409(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I). This is a final judgment.

The creditor bears the burden of proving, by a preponderance of the evidence, that a debt is non-dischargeable under 11 U.S.C. § 523(a). Grogan v. Garner, 498 U.S. 279, 287 (1991). Amy, as the creditor, bears the burden of proof on all claims.

### III. ANALYSIS

There are three distinct issues in this case: (1) whether the debt is a domestic support obligation, (2) whether the debt arises from reliance on a materially false writing concerning Robert's financial condition, and (3) whether the debt arises from false pretenses, false representation, or fraud. The Court will address each issue in turn.

#### A. The Debt is Not a Domestic Support Obligation[4]

The first issue is whether the debt Robert owes Amy is a domestic support obligation under 11 U.S.C. § 523(a)(5) or a property settlement debt arising out of divorce under § 523(a)(15). The distinction is important because a property settlement debt is potentially dischargeable in Chapter 13 bankruptcy, while a domestic support obligation is not. E.g., Coon v. Henderson (In re Coon), 522 B.R. 357, 361 (Bankr. M.D. Ala. 2014); see also 11 U.S.C. § 1328(a)(2) (excepting debts under § 523(a)(5) from discharge, but not debts under § 523(a)(15)).

---

[4]Robert concedes that the $2,990.00 he owes Amy for the tax lien is a domestic support obligation. Therefore, this section only addresses whether the remaining debt is a domestic support obligation.

A "domestic support obligation" is defined as "a debt owed to a former spouse of the debtor that is 'in the nature of alimony, maintenance, or support . . . of such spouse, . . . without regard to whether such debt is expressly so designated[.]'" Coon, 522 B.R. at 361 (quoting 11 U.S.C. § 101(14A)(B)).

"Whether a given debt is in the nature of support is an issue of federal law[,]" although "state law does provide guidance in determining whether the obligation should be considered 'support' under § 523(a)(5)." Cummings v. Cummings (In re Cummings), 244 F.3d 1263, 1265 (11th Cir. 2001) (internal quotation marks omitted). "To make this determination a bankruptcy court should undertake a simple inquiry as to whether the obligation can be legitimately characterized as support, that is, whether it is in the *nature* of support." Id. (internal quotation marks omitted, emphasis in original). "In conducting this inquiry, a court cannot rely solely on the label used by the parties" because "it is likely that neither the parties nor the divorce court contemplated the effect of a subsequent bankruptcy when the obligation arose." Id. (internal quotation marks omitted). "The court must therefore look beyond the label to examine whether the debt is actually in the nature of support or alimony." Id. "A debt is in the nature of support or alimony if at the time of its creation the parties intended the obligation to function as support or alimony." Id. "[T]he touchstone for dischargeability under § 523(a)(5) is the intent of the parties." Id. at 1266.

The starting point of any § 523(a)(5) analysis is the language of the divorce judgment or agreement. See Benson v. Benson (In re Benson), 441 Fed. Appx. 650, 651 (11th Cir. 2011) (listing the agreement's language at the foremost of eight factors relevant to determining the parties' intent). The divorce agreement in this case gives no indication that the parties intended

6

the debt as support for Amy. The section setting out the amount and terms of the debt is titled "Property Settlement" and the body of that section says nothing about support. Under the "Periodic Alimony" section, the divorce court expressly "reserve[d] the award of alimony" until Robert secured the release of the tax lien. (Ex. 1). If Robert failed to do so, the divorce court could "then address the issue of alimony *for the sole purpose* of reimbursing [Amy] from [Robert's] failure to secure the release of said tax lien." (Ex. 1) (emphasis added). Finally, under the "Mutual Release of General Claims" section, the agreement provided that each party "waive[d], release[d], renounce[d] and forever discharge[d] . . . all claims or rights for maintenance, support, counsel fees, suit money, or any similar claim, except as expressly provided herein." (Ex. 1); see also Benson, 441 Fed. Appx. at 651 (listing waiver of support rights as a factor in determining intent).

Nothing in the divorce agreement or consent judgment indicates that Robert's obligation to Amy would end in the event she died or remarried, as would normally be the case with periodic alimony. See Benson, 441 Fed. Appx. at 651 (listing that as another factor in determining intent). Furthermore, according to testimony elicited at trial, the origin of this debt was that Robert had incurred roughly $70,000 in credit card debt that both parties were liable for and that the parties agreed to divide between themselves in the divorce. The primary factor in favor of the debt being in the nature of support is that it was to be paid in monthly installments over a period of several years. See Benson, 441 Fed. Appx. at 651 (listing frequency and number of payments as a factor in determining intent). However, that factor is negated by the acceleration clause and accrual of interest on the debt, as well as the inference that Robert was financially incapable of making a large lump sum payment.

7

Based upon the language of the divorce agreement and the testimony offered at trial, the Court concludes that the parties intended the debt to be a property settlement. It follows then that the debt was not intended as support for Amy, and is not a domestic support obligation protected from discharge by § 523(a)(5).

### **B. Amy Did Not Admit a Written Statement Regarding Robert's Financial Condition into Evidence**

The Court's determination that the debt is not a domestic support obligation does not end the inquiry. Debts falling within the ambit of § 523(a)(2) also are not dischargeable in Chapter 13. See 11 U.S.C. § 1328(a)(2). Amy claims that the debt arose out of false pretenses or fraud subject to § 523(a)(2)(A) and out of reliance on a false written statement of Robert's financial condition subject to § 523(a)(2)(B). Because the § 523(a)(2)(B) claim can be disposed of quickly, the Court will address it first.

A debt is non-dischargeable if it is "for money, property services, or an extension, renewal, or refinancing of credit, to the extent obtained by –

> (B) use of a statement in writing –
>
> > (i) that is materially false;
> > (ii) respecting the debtor's or an insider's financial condition;
> > (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
> > (iv) that the debtor caused to be made or published with intent to deceive[.]"

11 U.S.C. § 523(a)(2)(B); see also Equitable Bank v. Miller (In re Miller), 39 F.3d 301, 304 (11th Cir. 1994). In other words, a debt is non-dischargeable when it "follows a transfer or extension induced by a materially false and intentionally deceptive written statement of financial condition upon which the creditor reasonably relied." Field v. Mans, 516 U.S. 59, 66 (1995). "The

8

objecting creditor has the burden of proving each of these elements by a preponderance of the evidence." Miller, 39 F.3d at 304 (citing Grogan, 498 U.S. at 287). "If any one of these elements is not met, the debt is dischargeable." Id.

The only three written documents Amy has offered in support of her § 523(a)(2)(B) claim are the divorce agreement, the consent judgment, and the motion for consent judgment. (Ex. 1, 2, 3). None of them purport to make any representation respecting Robert's financial condition. The consent judgment and motion for consent judgment make substantially the same statement – namely, that Robert owes $34,725.00 to Amy and must pay her $350 per month. (Ex. 2, 3). That is not a statement of Robert's financial condition within the meaning of § 523(a)(2)(B). Meanwhile, the divorce agreement only discusses Robert's property in generalities. It mentions that he owns a "business" called "Superior Portables," that he possesses "personal property and personal effects," and that he possesses a "vehicle." (Ex. 1). Tellingly, it also contains the following "Full Disclosure" provision:

> Each party has made an independent inquiry into the complete financial circumstances of the other, and acknowledges that he or she is fully informed of the income, assets and financial prospects of the other, and is satisfied that full disclosure has been made.

(Ex. 1). Thus, the divorce agreement indicates that whatever specific financial information Robert provided to Amy was given separately, yet Amy has not offered it as evidence. The Court holds that the divorce agreement itself is not a statement of Robert's financial condition within the meaning of § 523(a)(2)(B), and that Amy has not met her burden of proof on this element. Therefore, her § 523(a)(2)(B) claim must fail.

9

## C. Amy Has Not Proven False Pretenses, False Representation, or Actual Fraud

Amy's remaining claim is that the debt arises from false pretenses, false representation, or fraud. A debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[,]" is not dischargeable. 11 U.S.C. § 523(a)(2)(A). In other words, a debt is non-dischargeable when it "follows a transfer of value or extension of credit induced by falsity or fraud (not going to financial condition)[.]" Field, 516 U.S. at 66. "Courts have generally interpreted § 523(a)(2)(A) to require the traditional elements of common law fraud." SEC v. Bilzerian (In re Bilzerian), 153 F.3d 1278, 1281 (11th Cir. 1998) (per curiam); see also Field, 516 U.S. at 70 ("there is no reason to doubt Congress's intent to adopt a common-law understanding of the terms it used"). To protect a debt from discharge under § 523(a)(2)(A), a creditor must prove that:

(1) the debtor made a false representation to deceive the creditor,
(2) the creditor relied on the misrepresentation,
(3) the reliance was justified, and
(4) the creditor sustained a loss as a result of the misrepresentation.

Bilzerian, 153 F.3d at 1281; see Field, 516 U.S. at 61 (holding that a creditor's reliance under § 523(a)(2)(A) need only be justifiable, not reasonable). "The debtor must be guilty of positive fraud, or fraud in fact, involving moral turpitude or intentional wrong, and not implied fraud, or fraud in law, which may exist without the imputation of bad faith or immorality." Schweig v. Hunter (In re Hunter), 780 F.2d 1577, 1579 (11th Cir. 1986) (citing Neal v. Clark, 95 U.S. 704, 709 (1878)), *abrogated on other grounds by* Grogan, 498 U.S. at 287, *and* Field, 516 U.S. at 61.

10

"The cornerstone element in a Section 523(a)(2)(A) nondischargeability proceeding is a misrepresentation made with the intent to deceive the creditor." Old Republic Nat'l Title Ins. Co. V. Vermilio (In re Vermilio), 457 B.R. 854, 861 (Bankr. M.D. Fla. 2011); see also Yates v. Davis (In re Davis), 2013 WL 6796657, *2 (Bankr. M.D. Ala. Dec. 23, 2013); Capital Chevrolet v. Bullock (In re Bullock), 317 B.R. 885, 889 (Bankr. M.D. Ala. 2004) ("An actual, overt representation is the *sine qua non* of Section 523(a)(2)(A)."). Typically, the representation must be related "to a past or existing material fact." Bullock, 317 B.R. at 889. "Representations as to future intentions or promises to perform certain acts in the future generally do not give rise to actionable fraud, unless the defendant had no intent to fulfill the promise at the time of its making." Id.; see also Blosser v. Boggus (In re Boggus), 479 B.R. 147, 155 (Bankr. N.D. Ga. 2012) (distinguishing between an intent not to perform at the inception of an agreement and a subsequent intent not to honor a promise already made).

According to trial testimony, Amy's father "fronted" Robert $10,000 to start a port-a-john business. Robert subsequently charged both business and household expenses to credit cards that Amy had co-signed on, and failed to keep an accurate accounting of which expenses were for business. Though Robert testified evasively on these matters, this evidence only demonstrates questionable financial management skills, not a misrepresentation intended to deceive Amy. There was no testimony or other evidence to suggest that Robert used a false representation to induce Amy to assume joint liability on his credit cards.[5]

---

[5]The Court cut off this line of questioning during Amy's direct examination of Robert, finding it to be irrelevant. However, Amy had ample opportunity in her post-trial brief to explain why these facts provide a basis for fraud (or, for that matter, her other claims), and did not. Amy also did not testify in her own behalf that she had been misled about Robert's credit card usage.

11

Likewise, regarding the divorce agreement, there is no evidence that Robert made any false representations regarding past or then-current material facts. Robert failed to honor his promises to pay Amy, but there was no testimony or evidence that would indicate Robert intended to dishonor his promises at the divorce agreement's inception; on the contrary, Amy concedes that Robert made a few payments before defaulting, suggesting that he intended to make the payments at divorce but simply could not afford to afterward.

Amy argues that the basis of her fraud claim is the consent judgment. She alleges that she agreed to refinance Robert's debt at terms favorable to him based on his representation that he could make the lower monthly payment, and that all the while he was merely buying time to file bankruptcy. (Doc. 23, p. 5). Assuming, *arguendo*, that the consent judgment constitutes a refinancing of credit, Robert's promise to pay under the consent judgment is nothing more than a promise to take future action. Both parties testified that Robert was contemplating bankruptcy before the consent judgment was entered, and that Amy agreed to the consent judgment as an alternative to Robert filing bankruptcy. Thus, Amy's argument essentially boils down to the fact that Robert filed bankruptcy after promising not to, as reflected by the written language of the consent agreement itself.[6]

Pre-petition agreements to not file bankruptcy or to not seek discharge of a debt are generally unenforceable because they violate public policy. EFS Inc. V. Mercer (In re Mercer), 2013 WL 3367253, *2 (Bankr. M.D. Ala. Jul. 5, 2013); Infinity Group LLC v. Lucas (In re Lucas), 477 B.R. 236, 245-46 (Bankr. M.D. Ala. 2012); cf. 11 U.S.C. § 524(c) (listing

---

[6]Robert argues in his post-trial brief that a § 523(a)(2)(A) claim must be based on an *oral* misrepresentation. (Doc. 24, p. 6). The Court reads no such limitation into either the statute or the applicable case law.

12

requirements for reaffirmation agreements). Amy concedes that the bankruptcy and discharge waivers in the consent judgment are facially unenforceable, yet she asks the Court to construe Robert's broken promise as a misrepresentation on which a fraud claim can be based. The Court declines to do so. To hold otherwise would eviscerate the protections of the Bankruptcy Code, as every contract would have such provisions and every bankruptcy case would be replete with fraud claims based on such provisions. The Court will not allow a fraud claim to be used as a vehicle to circumvent the concerns of public policy. Thus, the Court holds, as a matter of law, that broken pre-petition promises to not file bankruptcy or to not seek to discharge a debt are not false representations within the meaning of § 523(a)(2)(A).

Even if such promises could be the bases for fraud claims, however, the Court finds that Robert did not have the requisite intent at the time he entered the consent agreement. Rather than Robert merely buying time to file bankruptcy, the evidence shows that he agreed to forebear on his legal right to file bankruptcy in order to make one final attempt to pay his debt to Amy. He only exercised his right to file bankruptcy after he defaulted on the consent judgment and after she seized his vehicle.

Amy has not met her burden of proving that Robert made a false representation with the intent to deceive her. Because the other three elements of fraud hinge on the satisfaction of the first one, Amy has failed to meet those elements as well. In short, her § 523(a)(2)(A) claim fails.

## IV. CONCLUSION

Plaintiff Amy Saggus has failed to prove that the debt owed her by Defendant Robert Saggus is a domestic support obligation pursuant to § 523(a)(5) or a debt arising out of fraud or a

false written statement of financial condition pursuant to § 523(a)(2). Therefore, Defendant's debt is dischargeable in Chapter 13 bankruptcy.

Judgment for the Defendant.

Done this 20th day of March, 2015.

*[signature]*

United States Bankruptcy Judge


c: Elizabeth McAdory Borg, Attorney for Plaintiff
   Charles M. Ingrum Jr., Attorney for Defendant